NEELY v. BLACK.

Opinion delivered October 8, 1906.

1. NOTE SECURED BY MORTGAGE—REMEDIES OF HOLDER.—The holder of a promissory note secured by mortgage may either sue on the note or proceed to foreclose the mortgage. (Page 217.)

2. SAME—RIGHTS OF MAKER.—The maker of a promissory note secured by mortgage can not compel the holder of the note to foreclose the mortgage, instead of suing him personally, nor to sue a third person who, in consideration of a transfer of the land, assumed the debt; though he may proceed in equity to compel the latter to pay the debt which he assumed. (Page 217.)

3  NOTE—INDORSEMENT WITHOUT RECOURSE.—Indorsement of a promissory note without recourse does not indicate that the indorsee takes with notice of any defects, or that he does not take on the credit of the other party or parties to the note, but only that he takes without recourse on the indorser. (Page 217.)

4. SAME—INDORSEMENT IN BLANK.—The holder of a promissory note indorsed in blank has the right to fill the blank with his own name, and thereby make the transfer to himself complete. (Page 218.)

Appeal from Little River Circuit Court; *James S. Steel,* Judge; reversed.

*J. T. Cowling,* for appellant.

The court erred in giving the fifth instruction requested by defendant. An indorsement without recourse is effective to transfer the legal title to the instrument, but does not render the indorser liable thereon in case of its non-acceptance or non-payment. 4 Am. & Eng. Enc. Law (2 Ed.), 276; Chitty on Bills, 13 Am. Ed. 235; Story on Prom. Notes, 146; 18 Ia. 202; 24 Kan. 604; 12 Kan. 618; 33 Me. 424; 5 Met. (Mass.), 201; 23 Wend. (N. Y.), 301; 8 Pa. St. 468; 46 Pa. St. 140; 18 Vt. 479. It does not affect the negotiability of the instrument, but simply qualifies the duties, obligations and responsibilities of the indorser. 4 Am. & Eng. Enc. Law, 376; 32 Ala. 536; 3 Mass. 225; 12 Mass. 14. An indorsement without recourse is not out of the due course of trade; the security continues negotiable notwithstanding such indorsement. 2 Rand. (Va.), 247. Such indorsement is not in itself sufficient to charge the indorsee with notice of any defense against the note on the part of the maker, nor to put him on inquiry with reference thereto. 71 Ill.314; 26 Mich. 410; 14 Pa. St. 14; 45 Wis. 110. See also 7 Cyc. 809; 99 Fed. 18. An indorsement in blank is a transfer of the title to the paper. 7 Cyc. 801; 48 Ark. 454; 7 Ark. 224; 15 Ark. 521; 13 Ark. 280. The holder may fill out the indorsement at any time before offering the note in evidence. 11 Ark. 325; 15 Ark. 418.

*L. A. Byrne,* for appellee.

Appellant can not claim that he is an innocent purchaser, neither is he entitled to the protection the law gives such purchaser. He acted through Barcroft, his agent, who was cognizant of all the facts. Notice to the agent is notice to the principal. 21 Ark. 22; 52 Ark. 11; 29 Ark. 99. If there was error in the fifth instruction complained of, it was harmless, since it appears by appellant's own evidence that Barcroft was his agent to make the purchase. He is held to a knowledge of all the facts known to his agent. 61 Ark. 86.

BATTLE, J. K. B. Neely brought this action against W. A. Black on a promissory note executed by the defendant to the Creston Loan & Trust Company for the sum of $400, and assigned by the payee to plaintiff; alleging that the note was unpaid. The defendant answered, and admitted that he executed the note, and alleged that the payment of the note was secured by a mortgage on lands in the county of Adair and State of Iowa, executed by himself and wife; that "at the time of its execution defendant was indebted to one J. R. Barcroft, of Iowa, in the sum of $636, evidenced by a note then past due; that immediately preceding the 28th day of March, 1900, defendant and Barcroft agreed upon a settlement in which Barcroft agreed to take said land at $30 per acre, and in payment therefor to surrender said note of $636 and assume and pay the note and coupons sued on herein; that, after computing interest, these amounts overpaid, by $38, the sum to be paid for the land, and that the defendant thereupon paid that amount to Barcroft in cash, and executed and delivered to him a deed to the land subject to the mortgage and debt due to Creston Loan & Trust Company; that during the year 1900, and in conformity with his said undertaking, Barcroft paid off the note to the Creston Loan & Trust Company, both principal and interest, and, colluding with the plaintiff to defraud the defendant and compel him to pay the note twice, he procured the Creston Loan & Trust Company to indorse the note in blank without recourse and surrender it to him, in order that it might be used in pursuance of an agreement between plaintiff and Barcroft as a basis for this suit. He denied that plaintiff is an innocent holder and the owner of the note, and that he paid value therefor before maturity; and averred

that Barcroft furnished the money to pay to the Creston Loan & Trust Company, that plaintiff never had any interest therein. Defendant further stated that he is a citizen of Little River County, Arkansas; plaintiff is a citizen of Iowa, in which State the land is situated; that Barcroft purchased the land subject to the mortgage or deed of trust, and assumed the payment thereof; that Barcroft, or his legal representatives, are in possession of the land and the rents and profits thereof; that the land is worth greatly in excess of the note sued on, and is locally accessible to plaintiff, but, by reason of the conspiracy and understanding between Barcroft and plaintiff to defraud defendant, plaintiff refused to proceed against the land, well knowing that, if he should attempt to do so, it would be made to appear that the money paid to the Creston Loan & Trust Company was furnished by Barcroft, and plaintiff had no valuable interest therein; that defendant is willing and ready to pay on the note any balance remaining after the sale of the land, if it should be made to appear that plaintiff was entitled thereto; that, if this suit proceeds to judgment, and defendant has to pay the judgment, he will be without any adequate remedy to protect his rights and subject the land to the payment of the debt.

"Prayer that the matter be transferred to equity, that plaintiff be required to surrender and cancel the note, or if, in the opinion of the court, plaintiff has any legal and pecuniary interest in the note that he be required to prosecute and exhaust his claim against the land before proceeding in this action."

Plaintiff replied to defendant's answer, and denied that Barcroft assumed or agreed to pay the note sued on, or that the same was paid by him or any one else, and that there was any fraud or collusion in the purchase of the note, or that any part of the purchase money was furnished by Barcroft; and alleged that he purchased and paid for the note with his own money, in good faith, and before the maturity thereof.

There are only two issues in the case, and they are: Did Barcroft assume the payment of the note? Did he pay it and cause it to be transferred or assigned to another?

The note is payable to the order of the Creston Loan & Trust Company, on the first day of April, 1903, at its office in Creston,

Iowa; and was assigned by the payee to plaintiff without recourse upon it.

Plaintiff testified that he authorized J. R. Barcroft to negotiate for the purchase of the note, which he did, and purchased it; and that he furnished Barcroft with $424.60 to pay for the note, which he did, and received it in return.

Defendant testified that he sold the land mortgaged to the Creston Loan & Trust Company to J. R. Barcroft at and for the price of $1,200, and received therefor his note held by Barcroft for $836.38, less $36.38 unpaid thereon, leaving $800; and for the remaining $400 of the $1,200 Barcroft assumed the payment of the note sued on; and that he conveyed the land to the purchaser by deed, in which he recites that he received therefor $1,200, and covenants 'that it is free from all incumbrances, except the mortgage to Creston Loan & Trust Company.

The correspondence between the Creston Loan & Trust Company and Barcroft in relation to the transfer of the note was read as evidence. It was commenced by the former writing to the latter that the interest due on the note had not been paid, and that it is informed that he owns the land mortgaged to it, and, if so, to send a draft to it for the same. Barcroft replied that he did not assume payment of the note, and says: "I purchased the land on representations that I find to be entirely false. I will find you a purchaser for the note who will take it at its face and interest under an indorsement without recourse. While this may not be desirable to the holder, I think it will be the cheapest and best for him, all things considered. I will send the draft under this proposition if you will send the note indorsed without recourse in blank to the Citizens' National Bank, Des Moines, Iowa. It will be less trouble and cheaper to have my litigation with him if the note is held by some one here. I have already arranged with one to buy the note. He will furnish the money when the note is sent as directed." This letter was followed by others in which Barcroft sent a draft to the company for the amount of the note, and informed it that it was not sent in payment, but for the purchase of the note; that "the money was received from another;" and that the note was not to be canceled, "but assigned in blank without recourse and sent to" him. This correspondence was read as evidence to the jury over

the objections of the plaintiff; but, as the objection is not urged in the brief, we consider it waived.

Over the objections of the plaintiff, the court gave the following among other instructions to the jury:

"No. 5. You are instructed that the assignment in blank without recourse of an obligation for the payment of money is, in legal effect, only a quitclaim of the debt, and the one who takes such an assignment can not claim the rights of an innocent purchaser; so, if in this case you find that the plaintiff accepted a transfer of the mortgage bond in question without recourse, these facts were sufficient to put him upon inquiry as to the nature of the transaction, and he will be held to a knowledge of all the facts connected with this transfer."

The jury returned a verdict in favor of the defendant, and the plaintiff appealed.

Appellant had the right to purchase the note sued on. Having purchased it, he had the right to enforce the payment of it by suing Black, the maker, recovering judgment against him for the amount thereof, and suing out an execution and causing the same to be executed, or by foreclosing the mortgage. *Fitzgerald* v. *Beebe,* 7 Ark. 319; *Benjamin* v. *Loughborough,* 31 Ark. 210. Black can not and could not compel the Creston Loan & Trust Company or Neely to foreclose the mortgage, so as to subject the land to the payment of the debt, and Barcroft, if he assumed the debt, to a judgment for any deficiency; but he could have proceeded in equity to compel Barcroft, if he assumed it, to pay off the mortgage according to his undertaking. *Marsh* v. *Pike,* 10 Paige, 595; *Cornell* v. *Prescott,* 2 Barb. 16; *Marshall* v. *Davies,* 78 N. Y. 414; *Cubberly* v. *Yager,* 42 N. J. Eq. 289; 1 Jones on Mortgages (6 Ed.), § 768.

If Neely purchased the note, he had the right to bring and maintain this action, unless Black or Barcroft had paid it. The only defence against the action is payment. That is the only act that will absolve Black from the obligation to pay it to the owner thereof. The fact that Neely procured Barcroft to purchase the note for him, and Barcroft did so and paid for the same with money Neely furnished him for that purpose, will not affect Neely's right to collect it. So the instruction given over the objections of appellant should not have been given. It was inap-

plicable and calculated to mislead the jury; and it is not correct. "As said in Virginia, by Green, J.: 'An indorsement without recourse is not out of the due course of trade. The security continues negotiable, notwithstanding such an indorsement. Nor does such an indorsement indicate, in any case, that the parties to it are conscious of any defect in the security, or that the indorsee does not take it on the credit of the other party or parties to the note. On the contrary, he takes it solely on their credit, and the indorser only shows thereby that he is unwilling to make himself responsible for the payment.'" 1 Daniel on Negotiable Instruments (5 Ed.), § 700, and cases cited.

If Neely purchased the note, and it was transferred to him in blank, he had the right to fill the blank with his own name, and thereby make the transfer to himself complete. *Edwards v. Scull,* 11 Ark. 325.

Reverse and remand for a new trial.